REVERSED.

FREEBURG v. THE CITY OF DAVENPORT.

1. **Cities and Towns**: RIGHTS AND DUTIES AS TO SURFACE WATER. A city has the undoubted right to bring its streets to grade in such way, time and manner as it sees fit; and it has the same right as the owners of abutting lots to protect itself against surface water. Where, therefore, the defendant, without negligence, brought its streets to grade, but failed to construct adequate gutters to carry off the surface water, and the same flowed from the graded street upon plaintiff's premises, *which were below the established grade*, *held* that the city was not liable to plaintiff for damages caused by such water, but that it had the right to presume that plaintiff would bring his premises to grade, and thus protect himself from the overflow.

For the rule in the case of agricultural lands, see *Livingston v. McDonald*, 21 Iowa, 160. Other cases, cited at end of opinion, distinguished.

*Appeal from Muscatine District Court.*

FRIDAY, MARCH 21.

ACTION to recover damages caused by the alleged negligence of the city in failing to provide sufficient outlets for surface water. Trial by jury, verdict and judgment for the plaintiff, and defendant appeals.

*C. M. Waterman*, for appellant.

*E. F. Richman*, for appellee.

SEEVERS, J.—After stating that the plaintiff is the owner of certain real estate situate within the city, the petition proceeds as follows:

"That petitioner's house is located on east end of said premises, and fronting on Mississippi avenue; that a ravine runs

through said premises from north to south, and west of, and lower than, the foundations of plaintiff's house, which, at the time of plaintiff's purchase of said premises and for a long time thereafter, afforded an outlet for the surface water falling on the streets and properties north of the plaintiff's said premises; that the city, by its street commissioner, officers, agents and employes, by filling Fourth street across the said ravine, north of the petitioner's said property, and by cutting and filling the said Mississippi avenue, have so diverted the said surface water from its natural courses and outlets that all of such surface water, falling and collecting on a large area of ground, north of plaintiff's said premises, does and must flow down on the western side of Mississippi avenue and in front of plaintiff's premises; and the said city, by its said agents and employes, has undertaken to conduct said water down and along the west side of Mississippi avenue, in gutters and pretended gutters constructed for that purpose, at a high grade, and considerably above the floors and foundations of plaintiff's said house; that the work so done by said city on said Mississippi avenue, in the first instance, was only partially in accordance with the grade legally adopted and established on said street by said city; that, thereupon, petitioner made application to the city council to have the ground prepared in front of his said premises for a sidewalk, to serve, at least, as a partial protection against the flood turned into his front door, but the said city refused and neglected to entertain his said petition; that, thereupon, petitioner, at great expense, raised his house to conform to the then actual grade of the street, and filled in ground between his house and said gutter, and constructed a heavy stone wall of some ten or twelve feet in height to protect his said premises, but he had hardly completed the said improvements and measures to protect himself and his property before the city, by its officers, agents and employes, again filled the western side of Mississippi avenue in front of his house, and raised the gutter some two or three

feet higher, so that the water could flow over the barriers plaintiff had endeavored to interpose.

"The plaintiff shows that the gutter and pretended means adopted for carrying off and beyond the petitioner's premises the said surface water were, and are, ridiculously inadequate for the purpose, and were so known to be at the time they were constructed; that no engineer was consulted respecting the sufficiency of said gutters or ways for said surface water, nor were they constructed with reference to any plan or system, but in utter and willful disregard of the damage that would ensue to plaintiff's property; that, for several years last past, the surface water from rains has continuously overflowed the gutters and ways provided for it by said city, to and upon the plaintiff's premises, destroying and washing away his garden and grounds, and has flowed into and through his house and cellar, destroying and weakening its walls and foundation, and rendering a portion of it uninhabitable and untenantable, and permanently injuring said house."

The defendant denied the material allegations of the petition, but it was admitted that certain grading was done on Fourth street. The defendant also pleaded that the plaintiff had been guilty of contributory negligence, and that his property is situate in a ravine below the grade of Mississippi avenue; that he failed to raise it to grade, or otherwise protect it from being overflowed; and that the damages sustained were caused by an extraordinary storm.

It will be observed that it is not alleged in the petition that the filling across the ravine on Fourth street was negligently done, nor that its effect was to collect surface water in a pond or reservoir, which was discharged or thrown over or against plaintiff's premises, but that, by reason of such filling, surface water was diverted and caused to flow down said avenue, and that, because of the insufficiency of the "gutter and ways" provided by the city, surface water has overflowed and damaged the plaintiff's premises.

It will be further observed that the plaintiff's premises are

situate below grade, and that he raised his house and built a stone wall to conform to the then actual grade, but that the city changed the gutter by raising it higher, so that the water could overflow the barriers so erected by him. It is not, however, alleged that the city acted negligently in raising the gutter, or did what they had no right to do.

The evidence tended to sustain the allegations of the petition. It will, therefore, be assumed that, by the filling done on Fourth street, the surface water was diverted and caused to flow along Mississippi avenue, and that the city failed to provide sufficient gutters on the avenue to carry off the increased flow, and, because of this fact, the plaintiff's premises were injured. There is no evidence which tends to show any negligence whatever on the part of the city, except the failure to provide sufficient gutters or other passage ways for the escape of the surface water. There is no evidence tending to show that the city purposely or unnecessarily did anything it should not have done.

Such being the material facts, counsel for the appellant insists that no liability attaches; and several authorities are cited. The rule upon this subject is thus stated in 2 Dillon's Municipal Corporations, 3rd Ed., § 1051: "There will be a liability, if the direct effect of the work, particularly if it be a sewer or drain, is to collect an increased body of water, and to precipitate it on the adjoining property to its injury. But, since surface water is a common enemy, which the lot owner may fight by raising his lot to grade, or in any other proper manner, and since the municipality has the undoubted right to bring its streets to grade, and has as much power to fight surface water in its streets as the adjoining private owner, it is not ordinarily, if ever, liable for simply failing to provide culverts or gutters adequate to keep surface water off from adjoining lots *below grade*, particularly if the injury would not have occurred had the lots been filled up, so as to have been on a level with the street."

The authorities bearing on the above proposition will be

found cited in notes to sections 1041, 1042, 1043 and 1044 in 2 Dillon, before cited. We regard the foregoing as a correct statement of the rule supported by the decided weight of authority. *Weis v. The City of Madison*, 75 Ind., 241. It is not deemed necessary to refer to and comment on the cases referred to by Judge Dillon. The law being as stated by him, the next question is whether this case is brought within the rule. We think it is, without serious doubt. The plaintiff's premises are below the grade of the street, and the defendant simply failed to provide sufficient water ways for the passage of the surface water. The city had the undoubted right to grade the street in such way, time and manner as it saw fit; it had the right to protect itself from surface water, and so had the plaintiff.

That the city had the right to make the fill on Fourth street must, of course, be conceded. The effect was to divert the surface water down Mississippi avenue. The plaintiff had the right, and it was his duty, to protect himself from this increased flow. The city had the right to assume that the plaintiff would bring his house and premises to grade, and to construct gutters or water ways under such belief. Under the undisputed facts in this case, we are of opinion that the plaintiff is not entitled to recover, and, therefore, the fourth and other paragraphs of the charge are erroneous.

To the end that we may not be misunderstood, we think it proper to refer briefly to certain decisions of this court. In *Livingston v. McDonald*, 21 Iowa, 160, the subject we have been considering, as applied to agricultural land, was largely discussed by DILLON, J., and certain rules, deduced from the civil law, were adopted by the court, which may not be in strict accord with the views herein expressed. In the case just cited, it was said: " And, in so holding, we add that we do not lay down any rule applicable to town or city property." The other cases are *Ellis v. Iowa City*, 29 Iowa, 229; *Simpson v. Keokuk*, 34 Id., 568; *Russell v. Burlington*, 30 Id., 262; and *Bartle v. The City of Des Moines*, 38 Id., 414.

In none of these cases was the question under consideration in this case either presented or determined.

It is not deemed necessary to determine the other errors assigned and discussed by counsel, except to say that we strongly incline to think the tenth instruction should have been given as asked by the defendant, and also that the fourth and fifth instructions asked by the defendant should have been given.

REVERSED.